UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of

JOHN ERIC BOLTEN,

                      Petitioner,

For an Order of Attachment in Aid of Arbitration Pursuant to Rule 64 of the Federal Rules of Civil Procedure and CPLR § 7502(c),

          -against-

VENACA, INC.,

                      Respondent.

07 Civ. 3438 (PKC)(FM)

## PETITIONER'S UPDATED MEMORANDUM OF LAW IN SUPPORT OF HIS APPLICATION FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION

SIMON•LESSER PC
420 Lexington Avenue
New York, New York 10170
(212) 599-5455
Attorneys for Petitioner John Eric Bolten

Dated: May 1, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................-ii-

PRELIMINARY STATEMENT ................................................................................................2

STATEMENT OF FACTS IN SUPPORT OF PETITION .........................................................3

ARGUMENT ..............................................................................................................................5

    A.    Applicable Legal Standard ................................................................................5

    B.    Likelihood of Success on the Merits .................................................................8

    C.    Need for Attachment.........................................................................................11

    D.    No Known Counterclaims .................................................................................12

CONCLUSION ..........................................................................................................................12

# TABLE OF AUTHORITIES

**Case law**                                                                                                          **Page(s)**

*Bishop v. Toys "R" Us-NY, LLC*, 414 F.Supp.2d 385 (S.D.N.Y. 2006)(PKC) ..............................6

*County Natwest Securities Corp USA v.*
*Jesup, Josephthal & Co.*, 180 A.D.2d 468, 579 N.Y.S.2d 376 (1st Dep't 1992) ......................12

*Hochstein v. U.S.*, 900 F.2d 543 (2d Cir. 1990) ..............................................................................9

*Matter of Arbitration Between Thorton & Naumes LLP v. Athari Law Office*,
36 A.D.3d 1119, 829 N.Y.S.2d 248 (3d Dep't 2007) ......................................................................7

*Pashaian v. Eccelston Properties, Ltd.*, 92 Civ. 5487,
1993 U.S. Dist. LEXIS 11347 (S.D.N.Y., Aug. 18, 1993) ..............................................................8

*People v. Grass*, 257 A.D.1, 11 N.Y.S.2d 803 (1st Dep't 1939) ....................................................9

*PolyGram v. 32-03 Enterprises, Inc.*, 697 F.Supp. 132 (E.D.N.Y. 1988) ...................................10

*Siemens Energy & Automation, Inc. v. Coleman Elec. Supply Co.*,
46 F.Supp.2d 217 (E.D.N.Y. 1999) ................................................................................................10

*Simas v. Merril Corp.*, 02 Civ. 4400,
2004 U.S. Dist. LEXIS 1415 (S.D.N.Y., Jan. 29, 2004) ..................................................................8

*Sivault Systems, Inc. v. Wondernet, Ltd.*, 05 Civ. 0890,
2005 U.S. Dist. LEXIS 4635 (S.D.N.Y., Mar. 28, 2005) ......................................................*passim*

*SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79 (2d Cir. 2000) .......................................................7

**Statutes and Rules**

CPLR § 7502(c) ............................................................................................................................ 6-7

Fed. R. Civ. P. 64 .............................................................................................................................6

N.Y. Labor Law § 191(c) ................................................................................................................8

N.Y. Labor Law § 198-a .................................................................................................................8

## PRELIMINARY STATEMENT

Petitioner John Eric Bolten ("Bolten") submits this Memorandum of Law in support of his Application for an Order of Attachment in aid of arbitration, pursuant to Rule 64 of the Federal Rules of Civil Procedure and CPLR § 7502(c).

In 2004, Mr. Bolten was hired by respondent Venaca, Inc. ("Venaca") as its sole salesperson. Venaca provides media asset management services, including services for cataloguing, accessing, and distributing content across the internet. *See* Venaca website, www.venaca.com.

Pursuant to the parties' Employment Agreement, Venaca agreed to pay Mr. Bolten an annual base salary of $115,000, in addition to commissions as enumerated therein. Venaca has deliberately failed to pay Mr. Bolten his earned commissions in accordance with his Employment Agreement. Venaca has expressly acknowledged past due commissions owed to Mr. Bolten as of August 1, 2006 in the amount of $146,991. In addition, since August 1, 2006, Mr. Bolten earned an additional $48,427 in commissions Venaca has also deliberately failed to pay in full.

In accordance with the arbitration provision in the parties' Employment Agreement, Mr. Bolten has commenced arbitration against Venaca based on its admitted failure to pay him his earned commissions.

Mr. Bolten now seeks an Order of Attachment in aid of that arbitration to attach and secure a sufficient amount of Venaca's limited cash on hand, because without such attachment, the arbitration award Mr. Bolten obtains will be rendered ineffectual.

## STATEMENT OF FACTS IN SUPPORT OF VERIFIED PETITION

The facts supporting Mr. Bolten's application for an Order of Attachment are detailed in his Amended Verified Petition, and summarized as follows:

From September 24, 2004 through January of 2007, Mr. Bolten was employed by Venaca as Vice President of Sales, and was the company's sole salesperson. Mr. Bolten's wages are enumerated in his Employment Agreement, a copy of which is attached as Exhibit A to the Verified Petition. Pursuant to the Employment Agreement, Venaca agreed to pay Mr. Bolten an annual base salary of $115,000 (increased to $125,000 in 2006), to be paid bi-weekly, in addition to sales commissions according to the agreement's defined "Commission Plan." (Am. Petition ¶¶ 5-7).

Mr. Bolten began work for Venaca in September 2004. (Am. Petition ¶ 8). He met and exceeded Venaca's expectations for his performance and was the sole source of revenue generation for Venaca. (Am. Petition ¶ 9). Indeed, from 2004 through the end of 2006, Mr. Bolten initiated, developed and consummated millions of dollars in sales for Venaca with several major U.S. media companies, including Lifetime Networks, MTV and Scripps Networks, Inc. (Am. Petition ¶ 9). Venaca publicized these significant transactions on its website and through several press releases. (Am. Petition ¶ 10).

These sales alone generated millions of dollars to Venaca and enabled Venaca to stay in business. (Am. Petition ¶ 11).

In late 2004, Venaca began to fall into arrears on its wage obligations to Mr. Bolten. (Am. Petition ¶ 12). Mr. Bolten often demanded payment of his earned compensation, and Venaca's officers always assured him that they would "catch up" on the amounts owed to him as soon as Venaca secured planned additional financing. (Am. Petition ¶ 13).

In April, 2006, Venaca received a large investment of institutional financing from Argentum Group and First Analysis Corporation. Venaca publicized this funding with a press release and on its website. (Am. Petition ¶ 14).

After Venaca failed to pay Mr. Bolten following its cash infusion from Argentum Group and First Analysis Corporation, he became suspicious of Venaca's intentions, and on August 1, 2006, approached Thomas Burchill, Venaca's Chief Executive Officer demanding payment in full of his earned compensation arrears. (Am. Petition ¶ 15). As of that date, Venaca owed Mr. Bolten $142,991 in past due earned commissions. (Am. Petition ¶ 16).

In response, Mr. Burchill prepared and signed as CEO of Venaca a written acknowledgment of the $142,991 of past due earned commissions owed to Mr. Bolten by Venaca. (Am. Petition ¶ 17).

At the time he executed Venaca's acknowledgement of this debt, Mr. Burchill assured Mr. Bolten that he would be paid in full out of the revenues from the Scripps Networks, Inc. sale Mr. Bolten had recently consummated. The Scripps Network revenues were expected to be at $1.8 Million in total, with $1.4 Million received by Venaca by December of 2006. (Am. Petition ¶¶ 18-19).

Venaca never paid Mr. Bolten the acknowledged $149,991 debt of commissions Mr. Bolten earned through August 1, 2006. (Am. Petition ¶ 20).

Between August 1, 2006 and January 1, 2007, Mr. Bolten generated an additional $1.83 Million in sales revenues for Venaca. (Am. Petition ¶ 21). For these sales, Mr. Bolten earned an additional $48,427.60 in commissions. (Am. Petition ¶ 22).

Despite Mr. Bolten's repeated demands for payment in full of these earned commissions, Venaca has paid only $13,000 to Mr. Bolten, leaving a remaining balance of $185,418, plus appropriate interest. (Am. Petition ¶ 23).

Venaca currently has approximately $1 Million in cash in its operating accounts at the Bank of America. (Am. Petition ¶ 24). However, this cash is expected to run out within the next several months. (Am. Petition ¶¶ 25, 29, 30). Nonetheless, Venaca continues to pay its executives substantial salaries. (Am. Petition ¶ 25).

Venaca has deliberately refused to pay Mr. Bolten his earned commissions, preferring instead to deplete its limited cash on hand by, among other things, paying its lucrative executive salaries. To make matters worse, Venaca has now forced Mr. Bolten to pursue his rights in arbitration (in accordance with the arbitration clause in the parties' Employment Agreement), despite Venaca's admitted liability for Mr. Bolten's earned commissions.

Accordingly, Mr. Bolten is compelled to apply for an Order of Attachment of all accounts and assets over which Venaca has a direct or indirect beneficial interest including the accounts held at Bank of America, or elsewhere, in order to prevent Venaca from distributing, transferring, or otherwise dissipating its assets pending the arbitration of Mr. Bolten's claims against Venaca for unpaid commissions. The Court's freezing of Venaca's accounts is necessary to ensure that funds are available to satisfy the eventual arbitration award and judgment.

## ARGUMENT

A.  **Applicable Legal Standard**

This Court has jurisdiction over this special proceeding pursuant to 28 U.S.C. §1332(a) as there is complete diversity of citizenship between the parties (Mr. Bolten is a

5

citizen and domicile of Massachusetts while Venaca is incorporated in Delaware corporation and has its principal place of business in New York), and the amount in controversy exceeds $75,000.00. (Am. Petition ¶¶ 1-3); *see also Bishop v. Toys "R" Us-NY, LLC*, 414 F.Supp.2d 385, 389 (S.D.N.Y. 2006)(PKC)("A corporation is deemed a citizen of both any state in which it is incorporated, and the state where it has its principal place of business.").

> Rule 64 of the Federal Rules of Civil Procedure provides:
>
> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

"[Mr. Bolten's] petition for an order of attachment is, accordingly, governed by New York law." *Sivault Systems, Inc. v. Wondernet, Ltd.*, 05 Civ. 0890, 2005 U.S. Dist. LEXIS 4635 * 7 (S.D.N.Y., Mar. 28, 2005).

CPLR § 7502(c), which governs provisional remedies in aid of arbitration proceedings, provides:

> The supreme court in the county in which an arbitration is pending or in a county specified in subdivision (a) of this section, may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitration that is pending or that is to be commenced inside or outside this state, whether or not it is subject to the United Nations convention on the recognition and enforcement of foreign arbitral awards, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. The provisions of articles 62 and 63 of this chapter shall apply to

6

the application, including those relating to undertakings and to the time for commencement of an action (arbitration shall be deemed an action for this purpose), except that the sole ground for the granting of the remedy shall be as stated above.

CPLR § 7502(c)(as amended Oct. 4, 2005).

As carefully analyzed by Judge Sweet in *Sivault Systems, Inc.*:

> Article 62 provides, in pertinent part, that a party seeking to obtain an order of attachment must show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to plaintiff.
>
> Thus, pursuant to Section 7502(c), the standard articulated in Section 6212(a) applies to [petitioner's] application for an order of attachment, except insofar as Section 6212(a) requires the party seeking an attachment to demonstrate the existence of "one or more grounds for attachment" identified in CPLR § 6201.
>
> The sole ground relevant to an application for an order of attachment brought under Section 7502(c) is "that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."

*Sivault Systems, Inc.*, 2005 U.S. Dist. LEXIS 4635 at * 8 (*citing SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 83-84 (2d Cir. 2000)).

Thus, on his application for an Order of Attachment, Mr. Bolten is "required to show that there is a viable cause of action, a probability of success on the merits, that the award may be rendered ineffectual without the relief sought, and that the amount demanded exceeds all counterclaims known to petitioner." *Matter of Arbitration Between Thorton & Naumes LLP v. Athari Law Office*, 36 A.D.3d 1119, 1120, 829 N.Y.S.2d 248, 249 (3d Dep't 2007).

Mr. Bolten has satisfied these requirements

7

B.   <u>**Likelihood of Success on the Merits**</u>

The likelihood of success on the merits standard is typically relaxed in the context of provisional remedy applications in aid of arbitration. Indeed, as noted by Judge Sweet in *Sivault Systems, Inc.*:

> [T]he Court is mindful that, [a]rbitration is frequently marked by great flexibility in procedure, choice of law, legal and equitable analysis, and remedy. Success on the merits in arbitration therefore cannot be predicted with the confidence a court would have in predicting the merits of a dispute awaiting litigation in court, and it can be expected that when the merits are in the hands of an arbitrator, this element of the analysis will naturally have greatly reduced influence.
>
> Accordingly, [petitioner's] application for an order of attachment will not be denied for failure to establish the likelihood of success on the merits in the underlying arbitration.

*Sivault Systems, Inc.*, 2005 U.S. Dist. LEXIS 4635 at *11-12 (*quoting SG Cowen Sec.*, 224 F.3d at 84).

Nonetheless, here, Mr. Bolten has clearly demonstrated the likelihood of success on the merits of his claims against Venaca for unpaid wages.

"Section 191(c) of the [New York] Labor Law requires that commissions be paid as agreed by contract but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned." *Pashaian v. Eccelston Properties, Ltd.*, 92 Civ. 5487, 1993 U.S. Dist. LEXIS 11347 * 4 (S.D.N.Y., Aug. 18, 1993)(*quoting* N.Y. Labor Law § 191(c)); *see also Simas v. Merril Corp.*, 02 Civ. 4400, 2004 U.S. Dist. LEXIS 1415 * 8 (S.D.N.Y., Jan. 29, 2004)("Pursuant to N.Y. Labor Law § 191(c), commission salesmen are to be paid in accordance with the agreed terms of employment.").

"The Labor Law also provides for liquidated damages equal to twenty-five percent of the total amount of wages found to be due in the event of a willful violation of

8

its provisions as well as the wages and attorney's fees." *Id.* (*citing* Labor Law § 198(1-a)). "The purpose of these [Labor Law] requirements is to ensure timely payment of commission earned, and to grant greater than ordinary protection to an employee's right to wages." *Id.* (*citing People v. Grass,* 257 A.D.1, 11 N.Y.S.2d 803 (1st Dep't 1939)).

The failure to pay earned wages is actually deemed a crime, and subjects the employer to criminal penalties, as well as any officer of the employer who knowingly fails to pay the wages. Labor Law § 198-a, entitled "Criminal Penalties," provides:

> Every employer who does not pay the wages of all of his employees in accordance with the provisions of this chapter, and the officers and agents of any corporation who knowingly permit the corporation to violate this chapter by failing to pay the wages of any of its employees in accordance with the provisions thereof, shall be guilty of a misdemeanor for the first offense and upon conviction thereof shall be fined not less than five hundred nor more than twenty thousand dollars or imprisoned for not more than one year. . .

N.Y. Labor Law § 198-a; *see also Hochstein v. U.S.,* 900 F.2d 543, 548-49 (2d Cir. 1990)(recognizing that Labor Law § 198-a "impos[es] criminal liability on officers and agents of employer for failure to pay wages.").

Here, Mr. Bolten has clearly and irrefutably demonstrated Venaca's liability to him under his Employment Agreement, and hence under the Labor Law, for its deliberate failure to pay him his earned commissions.

Indeed, Venaca's CEO executed a written acknowledgment of Venaca's arrears to Mr. Bolten for the commissions he earned from September, 2004 through August 1, 2006. The written acknowledgement states:

9

> Please allow this letter to serve as confirmation that the company acknowledges that it owes you the following amounts, payable in cash, for past due commissions:
>
> 2004  $61,236.99
> 2005  $48,736.01
> 2006  $21,242.00
> Total $142,991.00
>
> This total represents the amount due through 8/1/06. The Company has applied a 15% interest rate on the commissions due to you.

(Am. Petition ¶ 17)(Petition Ex. D).

This express acknowledgement is an admission of Venaca's obligation to pay Mr. Bolten the $142,991 in earned commissions for the period September, 2004 through August 1, 2006. *See Siemens Energy & Automation, Inc. v. Coleman Elec. Supply Co.*, 46 F.Supp.2d 217 (E.D.N.Y. 1999)(granting summary judgment on a acknowledged debt because "[officer] admits to [defendant's] indebtedness."); *accord PolyGram v. 32-03 Enterprises, Inc.*, 697 F.Supp. 132, 136 (E.D.N.Y. 1988)("An account stated is an agreement, expressed or implied, that an examination of the account between the parties has occurred, a statement of that account has been asserted, and accepted as correct.").

Moreover, Mr. Bolten has submitted sufficient proof of the additional $48,427.60 in commissions he earned between August 1, 2006 and January 1, 2007 (Am. Petition ¶¶ 21, 22). Despite Mr. Bolten's repeated demands for payment in full of these earned commissions, Venaca has paid only $13,000 to Mr. Bolten, leaving a remaining balance of $185,418, plus appropriate interest. (Am. Petition ¶ 23).

Thus, on this Application, Mr. Bolten has sufficiently established the likelihood of success on the merits of his claims against Venaca for unpaid earned commissions in the amount of at least $185,418, in addition to appropriate liquidated damages under the Labor Law, interest and attorney's fees.

C.  **Need for Attachment**

Mr. Bolten has also satisfied the requirement that the arbitration award "may be rendered ineffectual without such provisional relief." CPLR § 7502(c)..

Venaca currently has approximately $1 Million in cash in its operating accounts at the Bank of America. (Am. Petition ¶ 24). This cash is expected to run out within the next several months. (Am. Petition ¶¶ 25, 29, 30).

Indeed, Venaca prepared a "12 Month Cash Flow" for 2007, which reflects that by September, 2007, it will have only $11,000 in projected monthly earnings, with monthly operating expenses amounting to nearly $525,000, of which, $437,211 for salaries and benefits. (Am. Petition ¶ 29)(Petition Ex. G) According to this document, while Venaca currently has the ability to pay Mr. Bolten what it admittedly owes him, it will not be able to do so in the coming months. This is why Mr. Bolten believes Venaca is forcing him to arbitrate its admitted debt to Mr. Bolten, hoping to capitalize on the delay Mr. Bolten will face in obtaining final judgment against Venaca so that by the time such final judgment is entered upon the arbitration award, Venaca will have no assets to execute upon. (Am. Petition ¶ 30).

Venaca has deliberately refused to pay Mr. Bolten his earned commissions, preferring instead to deplete its limited cash on hand by paying its lucrative executive salaries, among other expenses. Given its precarious cash position, and its potential insolvency, Mr. Bolten has established the arbitration award he may be entitled to may be rendered ineffective without the attachment sought. *See Sivault Systems, Inc.,* 2005 U.S. Dist. LEXIS 4635 at *13 ("On this record which suggests Wondernet's potential insolvency, SiVault has established that a ground for an attachment exists insofar as the award to which SiVault may be entitled may be rendered ineffectual without the

11

attachment sought."); *see also County Natwest Securities Corp USA v. Jesup, Josephthal & Co.*, 180 A.D.2d 468, 468, 579 N.Y.S.2d 376, 377 (1st Dep't 1992)("Petitioner has clearly demonstrated the possibility, if not likelihood, that absent the attachment being requested, the ultimate arbitration award would be severely compromised.").

D. **No Known Counterclaims**

Venaca's expressly acknowledged debt to Mr. Bolten for unpaid wages is not subject to any known set-off or counterclaim. (Petition ¶ 17)(Petition Ex. D).

## CONCLUSION

Mr. Bolten respectfully requests that this Court Order the attachment of all accounts and assets over which Venaca Inc. has a direct or indirect beneficial interest including the accounts held at Bank of America, or otherwise exercises direct or indirect control, in the amount of no less than $250,000, which is an amount sufficient to cover Venaca's financial obligations to Mr. Bolten for earned commissions, statutory damages, interest, and attorneys fees. Mr. Bolten also respectfully requests such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 1, 2007

Respectfully submitted,

SIMON•LESSER PC

By: _____
Leonard F. Lesser (LL-4054)
420 Lexington Avenue
New York, New York 10170
T: 212.599.5455
F: 212.599-5459
Attorneys for Petitioner John Eric Bolten