UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In the Matter of the Application of

JOHN ERIC BOLTEN,

                              Petitioner,

                      07 CIV 3438
                      (PKC) (FM)

        -against-                                AFFIDAVIT OF GEORGE GRIPPO IN OPPOSITION TO BOLTEN'S REQUEST FOR
VENACA,                                          PRELIMINARY RELIEF

                              Defendant.
-----------------------------------------------------------------------X

## AFFIDAVIT

George Grippo, being duly sworn deposes and says:

1. My name is George Grippo and I am the President and Chief Executive Officer of Venaca. I am also a member of the Board of Directors of Venaca.

2. This proceeding arises from an employment relationship between my current company, Venaca, and one of its former employees, Eric Bolten (Bolten). Bolten recently commenced arbitration and now moves for an order of attachment seeking payment of commissions allegedly owed to him.

3. However, Venaca does not believe he is owed the amounts claimed given his numerous and material breaches of the terms of his employment as

set forth in the employment agreement and non-disclosure agreement between Venaca and Bolten. Venaca has suffered damages resulting from Bolten's breaches well in excess of the amounts Bolten claims.

4. I have personal knowledge of facts relevant to the application of Eric Bolten for an order of attachment as well as the facts contained in this affidavit.

5. Bolten as an employee of Venaca executed an employment agreement, including an employee non-disclosure agreement upon commencement of his employment (the "Agreement").[1]

6. Venaca has commenced an investigation into expenses submitted by Bolten for reimbursement by Venaca. While the investigation is not yet complete, Venaca has thus far uncovered several instances of expenses submitted for reimbursement by Bolten which were paid by Venaca and which are not proper expenses. Venaca will make a claim in the arbitration for repayment of these expenses.

7. In March of 2006, Bolten booked a trip from Boston to New York and then to Norfolk. Bolten was not authorized to bill Venaca for his travel from Boston to New York, yet did so.[2]

8. In July 2006, Bolten yet again used his corporate card to charge airfare for himself from New York to Boston. Again, this use of his Venaca corporate card is not a legitimate business expense and was prohibited.[3]

9. Bolten again, without authorization and against Venaca policy billed airfare

---

[1] See employment agreement attached as Exhibit 1.
[2] See email from Wasiqa Qasuria attached as Exhibit 2 hereto.
[3] See email from Wasiqa Qasuria attached as Exhibit 3 hereto.

for yet another trip to his home in Boston in August 2006.[4]

10. In addition to these improper expenses, Bolten's Agreement prohibited his use or publication of confidential materials obtained during the course of his employment with Venaca. Moreover, Bolten was required, upon termination of his employment with Venaca, to return all materials to Venaca, including any confidential information.

11. I have reviewed the papers submitted by Bolten in support of his application and note that he attaches as exhibits two confidential financial documents obtained through the course of his employment with Venaca.[5] Thus, he has breached his Agreement not only by using such documents in direct contravention of his obligations under the Agreement, but also by not returning such documents upon termination from Venaca.

12. The confidential and sensitive information contained in the documents attached as exhibits to Bolten's moving papers involve cash flow analysis and sales targets, *based on then known information*, and are outdated.

13. However, such information, in the hands of a competitor, could be used exactly as Bolten has used them—to attempt to portray Venaca as a company on the verge of financial crisis—and to use that inaccurate portrayal to the competitor's benefit. The mere fact that this information is floating around in a public document, available to anyone, is potentially devastating.

14. I am also aware of Bolten's performance during his tenure at Venaca

---

[4] See email from Wasiqa Qasuria attached as Exhibit 4 hereto.
[5] See Amended Verified Petition at Exhibit G.

since I interacted with him on an almost daily basis and sat through presentations he made to Venaca's board.

15. In three years as Venaca's Vice President of Sales, Bolten never learned or was able to demonstrate the product he was allegedly selling. Venaca hired a Vice President of Business Development who learned to demonstrate the product in less than ninety days.

16. Bolten was responsible for the Vice President of Business Development's resignation. It was agreed by everyone involved with the company, with the exception of Bolten, that her loss was critical.

17. Bolten was the specific reason the Christian Broadcast Network declined to purchase Venaca's software as he showed up intoxicated to a final meeting with CBN at the National Association of Broadcasters Conference in Las Vegas. Additionally, Bolten was responsible for a critical potential strategic partnership being destroyed as he was also intoxicated for that meeting.

18. Bolten consistently overstated his sales targets and missed his sales numbers throughout his tenure with Venaca. All of Bolten's supposed sales were in fact preexisting relationships that Venaca had created prior to Bolten's hiring. In fact, subsequent to his departure from Venaca, I became aware that he had misrepresented the status of his sales to CSTV to the board.

19. In fact, Bolten became such a problem in terms of meeting sales targets, following up with potential clients, closing sales deals and prospecting for

new potential sales that Venaca assigned a "keeper" to him to monitor his progress and remind him of the tasks he needed to perform and ensure that he followed up.[6]

20. Bolten, also flouted his contractual obligations under the Agreement by soliciting a then Venaca employee, inducing him to leave Venaca to work with Bolten at his current venture.

21. The employee, Greg Haley, was a database administrator specifically assigned to several large clients. The loss of Haley because of Bolten's solicitation has caused Venaca to incur significant expenditures including in excess of $50,000 for temporary personnel, and significant delays at two large clients resulting in over $700,000 in revenue and future sales being placed at risk.

22. The risk of loss of the revenue and future sales as well as all of the costs associated with Haley's departure all result from Bolten's solicitation of Haley and his subsequent departure. Thus, Venaca will be seeking to recover these costs (over $700,000) and others, all of which arise from Bolten's breach of his Agreement, in the arbitration commenced by Bolten.

23. Bolten also fell far short in other area in abiding by his Agreement. Company policy at Venaca is that no one may take more than two weeks of vacation consecutively. At the end of 2006, Bolten took three weeks of vacation without prior knowledge or approval. Venaca will seek in the arbitration disgorgement of the amounts it paid Bolten for his unauthorized vacation. That amount is approximately $7,211.54.

---

[6] See email from Heather Shankweiler dated March 28, 2006, attached hereto as Exhibit 5.

24. Moreover, despite being paid through January 2007, Bolten made no sales efforts from about September 2006 through his termination in January 2007. Venaca will seek to recoup in the arbitration all payments made to Bolten for that period of time given that he agreed to "...devote his best efforts to furthering the best interests of Venaca..." during his employment. The amount of his salary for that period of time is approximately $41,666.67.

25. I understand from counsel that in order to obtain an attachment, Bolten must show a likelihood of success, irreparable harm and a balancing of the equities. Bolten cannot succeed on his claims since the claims asserted by Venaca greatly exceed Bolten's claims. Moreover, Bolten cannot show irreparable harm. He used confidential financial information that is more than five months stale to claim that Venaca might not be able to satisfy a judgment. Finally, his retention and use of that confidential financial information, coupled with his solicitation of a then current Venaca employee as well as the other numerous breaches of his employment agreement discussed above militate against a balancing of the equities in his favor.

26. I also understand from counsel that that CPLR §6201 provides the grounds under which attachment may be sought. CPLR §6201 (1), (2), (4) and (5) are without question inapplicable to Venaca. The only possible ground for attachment is under CPLR §6201 (3). I am advised that under CPLR §6201 (3) there must be an intent to defraud a creditor or frustrate

the enforcement of a judgment by assignment, disposition, encumbrance or secretion of assets, a removal of assets from the state or that the defendant is about to do such things. Venaca has not done any of these acts, nor is it about to do them. Venaca's assets are used, and will continue to be used, in the ordinary course of its business.

27. For all of the reasons set forth above, Venaca respectfully requests that Bolten's motion for attachment be denied.

_George Grippo_

SWORN TO BEFORE ME THIS 21st ~~18th~~ DAY OF MAY 2007

_Linda Doster_
Notary Public

My Commission Expires: 11/25/08

Linda Doster
Notary Public of New Jersey
My Commission Expires Nov 25, 2008