

## VENACÁ, Inc.
## FY2004 VICE PRESIDENT OF SALES INCENTIVE COMPENSATION PLAN

Section A

Dear Eric:

It is my pleasure to extend the following offer of employment to you on behalf of Venacá:

Title:   Vice President, Sales

Reporting Relationship:   The position will report to Scott Spector, CEO.

Base Salary: $115,000 annually, to be paid in bi-weekly installments of $4,423.08 and subject to deductions for taxes and other withholdings as required by law or the policies of the company. In addition, you will be reimbursed for all eligible travel, lodging and entertainment expenses The salary will be prorated for this year beginning July 23, 2004. Section B of this document refers to your eligibility to participate in the sales commission plan (the "Commission Plan").

[handwritten in margin: $105K]

Options Plan: Effective upon satisfactory completion of the 90-day probationary period, and based upon the goals and objectives agreed to in the performance development planning process with your direct report, you will be eligible for options in the equity of Venacá. The option plan will be prorated for this year. The plan for this year and beyond will be based on the formula determined by the company for that year.

Non-Compete/ Non-Disclosure Agreement: Our standard non-compete agreement must be signed prior to your start date.

Benefits: Standard company health, disability and dental insurance coverage are supplied and effective per company policy.

Vacation:  Two weeks per year, plus personal days per company policy. This benefit is prorated for this year.

Start Date:  Immediately

Your employment with Venacá is at-will and either party can terminate the relationship at any time with or without cause and with or without notice. This offer is in effect for thirty days.

Section B

SALES COMPENSATION

1. 2004 Commission and Bonus Payments:

   | | |
   |---|---|
   | Base Commissions | (see Paragraph 2) |
   | Milestone Bonus | (see Paragraph 3) |
   | Discretionary Bonus | (see Paragraph 4) |
   | Yearly Bonus | 2% of exceeded yearly target |



2. **Base Commissions**: You are eligible to receive a base commission for all revenue sales (licenses, maintenance, support and installations) booked each quarter. Existing revenue prior to your start date will not be considered as commissionable under this agreement. (See Exhibit 1) The base commission applied each quarter shall vary according to your sales performance relative to goal (see Exhibit 3), applied cumulatively for the year to date. The Base commission will be applied according to the following schedule:

   Up to 100% of Quarter Goal                     6.5%
   100% Incremental of Quarter Goal or higher     8.0%

3. **Milestone Bonus**:
   For each of the following Agreements or renewals, you will be eligible for the corresponding dollar figure (See Exhibit 2):

   Professional Services Agreement      $  500 per agreement
   Software License Agreement           $1,000 per agreement
   Maintenance and Support Agreement    $  250 per agreement
   Renewal                              $  150 per agreement

4. **Discretionary Bonus**: This component of your pay will be determined by the CEO. It will be based on your general performance in job functions (i) ancillary to the smooth operation of our sales business such as contractual administration, written client follow-up, sales related billing follow-up, assistance with collections and other duties ancillary to your role; and/or (ii) the strategic value of obtaining certain high-profile accounts, especially if permitted in use as reference accounts or press releases.

5. **In Excess of Plan Bonus**: All revenue generated in excess of the fiscal 2004 budgeted revenue plan shall be paid at a rate of 2% on the amount exceeding the budgeted revenue, if applicable.

6. There is no cap to total compensation.

## C. PAYMENT SCHEDULE

Payment of Base Salary and payment Milestone Bonus (if performed in the previous bi-weekly period, as applicable) shall be on a bi-weekly basis. Payment of Base Commissions and Discretionary Bonus as outlined above shall be made quarterly within 15 days of the end of the applicable period presuming that all outstanding invoices related to commissionable revenue have been paid in full.

Quarterly revenue targets have been established based upon the fiscal 2004 budget. See FY2004 Budget for further details.

## D. ELIGIBILITY FOR COMMISSION PAYMENTS

The above target and total compensation levels are presented on an annual basis and are based on employment for the period covering January 1, 2004-December 31, 2004.

## E. COMPENSATION AFTER TERMINATION

You agree that your employment may be terminated by the Company at any time, with or without cause. In the event of your termination of employment by the Company for other than cause you shall be entitled to the following:

You will be paid commissions at your then-current commission rate on net payments received by the Company on agreements generated by you prior to the termination of your employment in accordance with the following schedule:

| Number of months remaining on Agreement | Reduction of Commissions Payable on Balance |
|---|---|
| Less than 3 months | 25% |
| 3-6 months | 50% |
| 6-9 months | 75% |
| 9 or more months | 100% |

If your employment is terminated by the Company for cause as defined below, you shall not be entitled to any further compensation or benefits from the Company after the date of termination. For purpose of this Agreement, a termination "for cause" occurs if you are terminated for any of the following reasons involving willful and intentional conduct:

(i) theft, dishonesty, or falsification of any employment or Company record;

(ii) improper disclosure of the Company's confidential or proprietary information;

(iii) any intentional act by you which has a material detrimental effect on the Company's reputation or business; or

(iv) any material breach of this Agreement, which breach is not cured within thirty (30) days following written notice of such breach from the Company.

In the event of any dispute or claim relating to or arising out of this employment relationship, this Agreement, or the entering into or termination of this employment relationship (including, but not limited to, any tort, contract or discrimination claims), all such disputes shall be fully and finally resolved by binding arbitration conducted by the American Arbitration Association in New York County, New York; provided, however, that this arbitration provision shall not apply to any disputes or claims relating to or arising out of the misuse or misappropriation of the Company's trade secrets or proprietary information.

SUCCESSORS AND ASSIGNS: This Agreement shall inure to the benefit of and be binding upon the Company and its successors and assigns. In view of the personal nature of the services to be performed under this Agreement by Employee he shall not have the right to assign or transfer any of his rights, obligations or benefits under this Agreement, except as otherwise noted herein.

ENTIRE AGREEMENT: This Agreement constitutes the entire employment agreement between you and the Company regarding the terms and conditions of your employment, with the exception of (i) the Employment Agreement Regarding Confidentiality described above and (ii) any stock option agreement between Employee and the Company. This Agreement supersedes all prior negotiations, representations or agreements between Employee and the Company, whether written or oral, concerning Employee's employment by the Company.

NO REPRESENTATIONS: You acknowledge that you are not relying, and have not relied, on any promise, representation or statement made by or on behalf of the Company which is not set forth in this Agreement.

SEVERABILITY: If any one or more of the provisions (or any part thereof) of this Agreement shall be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions (or any part thereof) shall not in any way be affected or impaired thereby.

MODIFICATION: This Agreement may only be modified or amended by a supplemental written agreement signed by Employee and the Company.

INTERPRETATION: This Agreement shall be interpreted in accordance with and governed by the laws of the State of New York

VIII.  Employee Acknowledgment:

The undersigned employee acknowledges and agrees that he has received and read the foregoing Agreement and understands it terms.

Received and Acknowledged:

_____   Date: 9/24/04
J. Eric Bolton



EXHIBIT 1

For purposes of Section B paragraph 2 Base Commissions, existing revenue includes any and all revenue generated by the following customers: CSTV, Sesame Workshop, WeightWatchers, Inc., WFUV, Mobile Vision, Inc., and Oxygen Media.

EXHIBIT 2

For purposes of Section B paragraph 3, the current plan calls for 7 new software licenses, 2 API sets and Professional Services. The total projected revenue for purposes of this section is $1,520,500. Professional Services represents $205,000; Software Licenses represent $1,315,500; and Maintenance and Support Agreements will total $304,100. If Sales Budget numbers are achieved, the "Milestone Bonus" portion of your commission will reflect an additional $500 for Professional Services contract, $7,000 for Software Licensing, and $1,750 in Maintenance and Support Agreements. The total Milestone Bonus represents just over one-half of one percent of the Sales Budget.

EXHIBIT 3

Remaining Quarterly Revenue Targets are as follows:

<u>2004</u>
Q3      $  576,880
Q4      $1,049,000

FROM : FAX NO. : 2126519149    Jan. 24 2007 04:48PM P4

CONFIDENTIAL

Venaca Inc
770 Broadway, 2nd Floor, New York, NY 10003
Phone: 646.495.6210 | fax 646.495.6268
www.venaca.com


**Venaca**
Digital Asset Management Systems

DATE:

Attention: CHARLES McCORMICK    From: GEORGE GRUPPO
Re:    Phone number: 646 495 6269
Fax Number: 212 504 9574    Number of Pages, Including Cover:

☒ URGENT    ☐ REPLY ASAP    ☐ PLEASE COMMENT    ☐ PLEASE REVIEW    ☐ FOR YOUR INFORMATION

COMMENTS:

CHARLES,
   ATTACHED IS THE NDA & PACKAGE FROM
ERIC'S LAW FIRM.

   THANK YOU
      GEORGE

# fax cover

This facsimile may contain material that is confidential, privileged and/or work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

---

BOLTON

## EMPLOYEE NON-DISCLOSURE AGREEMENT

1. **General.** As an employee of VENACA, INC. ("Venaca"), a company incorporated in Delaware with an address of 30 W 21st Street, 4th Floor, New York, NY 10010 and in consideration of the compensation now and hereafter paid to me, I will devote my best efforts to furthering the best interests of VENACA. During my employment, I will not engage in activity that:

   (a) conflicts with VENACA business interests, including without limitation, any business activities not contemplated by this agreement;
   (b) occupies my attention so as to interfere with the proper and efficient performance of my duties at VENACA; or
   (c) interferes with the independent exercise of my judgment in VENACA'S best interests.

   As used herein, VENACA business means the development, marketing and support of software and services for business and professional use including operation systems, application programs, Internet related websites or custom development software as well as books and hardware for the computer marketplace.

2. **Recognition of Absolute ownership.** That I do hereby recognize and admit that VENACA is the absolute, unrestricted and exclusive owner of the confidential or proprietary technical, financial, marketing, manufacturing, distribution, or other technical or business information or trade secrets of VENACA, including without limitation, concepts, techniques, processes, methods, systems, designs, clients, cost data, computer programs, formulae, development or experimental work, work in progress, customers and suppliers as well as software for business and professional use application programs, operating systems, Internet websites or custom development software, books, hardware and information for the computer marketplace used by me in the course of my employment with VENACA.

   I agree that I shall not in any manner whatsoever, represent and/or claim that I have any interest by way of ownership, assignment or otherwise in the same.

   In this agreement, all confidential and/or proprietary information belonging to and/or in possession of VENACA, which is received, accessed, and/or used by me during the course of my employment with VENACA, shall include without limitation, such information received from VENACA, its customers and/or any entity in which VENACA holds or controls more than 50% of the equity stock thereof and/or is entitled to vote for the election of directors.

3. **Non-Disclosure.** At all times, during my employment and thereafter, I will not disclose to anyone outside VENACA nor use for any purpose other than my work for VENACA:

   a. any confidential or proprietary technical, financial, marketing, manufacturing, distribution or other technical or business information or trade secrets of VENACA, including without limitation, concepts, techniques, processes, methods, systems, designs, circuits, cost data, computer programs, formulae, development or experimental work, work-in-progress, customers and suppliers;
   b. any information VENACA has received from others which VENACA is obligated to treat as confidential or proprietary or
   c. any confidential or proprietary information which is circulated within VENACA via its internal electronic mail system, intranet or otherwise.

   I will also not disclose any confidential or proprietary information to anyone inside VENACA except on a "need-to-know" basis. If I have any questions as to what comprises such confidential or proprietary information or trade secrets, as to whom, if anyone inside VENACA, it may be disclosed, I will consult with my manager at VENACA.

4. **Assignment of Inventions.** I hereby assign exclusively to VENACA all my right, title and interest in and to any all inventions, discoveries, designs, developments, improvements, copyrightable material, and trade secrets (collectively herein "Inventions") that I solely or jointly may conceive, write, encode, develop, or reduce to practice during the period of time I am in the employment of VENACA. I will make prompt and full disclosure to VENACA of any inventions, and if for any reason the assignment pursuant to this clause is not effective, will hold all such inventions in trust for the sole benefit of VENACA.

   I hereby waive and quit claim to VENACA, any and all claims of any nature whatsoever that I now or hereafter may have for infringement of any patent resulting from any patent applications for any inventions so assigned to VENACA.

   My obligation to assign shall not apply to any invention about which I can prove that:
   a) it was developed entirely on my own time; and
   b) no equipment, supplies, facilities, services or trade secret of VENACA was used in its development; and
   c) it does not relate

Bolten

## EMPLOYEE NON-DISCLOSURE AGREEMENT

1. **General.** As an employee of VENACA, INC. ("Venaca"), a company incorporated in Delaware with an address of 30 W 21st Street, 4th Floor, New York, NY 10010 and in consideration of the compensation now and hereafter paid to me, I will devote my best efforts to furthering the best interests of VENACA. During my employment, I will not engage in activity that:

   (a) conflicts with VENACA business interests, including without limitation, any business activities not contemplated by this agreement,
   (b) occupies my attention so as to interfere with the proper and efficient performance of my duties at VENACA, or
   (c) interferes with the independent exercise of my judgment in VENACA'S best interests.

   As used herein, VENACA business means the development, marketing and support of software and services for business and professional use including operation systems, application programs, Internet related websites or custom development software as well as books and hardware for the computer marketplace.

2. **Recognition of Absolute ownership.** That I do hereby recognize and admit that VENACA is the absolute, unrestricted and exclusive owner of the confidential or proprietary technical, financial, marketing, manufacturing, distribution, or other technical or business information or trade secrets of VENACA, including without limitation, concepts, techniques, processes, methods, systems, designs, clients, cost data, computer programs, formulae, development or experimental work, work in progress, customers and suppliers as well as software for business and professional use application programs, operating systems, internet websites or custom development software, books, hardware and information for the computer marketplace used by me in the course of my employment with VENACA.

   I agree that I shall not in any manner whatsoever, represent and/or claim that I have any interest by way of ownership, assignment or otherwise in the same.

   In this agreement, all confidential and/or proprietary information belonging to and/or in possession of VENACA, which is received, accessed, and/or used by me during the course of my employment with VENACA, shall include without limitation, such information received from VENACA, its customers and/or any entity in which VENACA holds or controls more than 50% of the equity stock thereof and/or is entitled to vote for the election of directors.

3. **Non-Disclosure.** At all times, during my employment and thereafter, I will not disclose to anyone outside VENACA nor use for any purpose other than my work for VENACA:

   a. any confidential or proprietary technical, financial, marketing, manufacturing, distribution or other technical or business information or trade secrets of VENACA, including without limitation, concepts, techniques, processes, methods, systems, designs, circuits, cost data, computer programs, formulae, development or experimental work, work-in-progress, customers and suppliers,
   b. any information VENACA has received from others which VENACA is obligated to treat as confidential or proprietary or
   c. any confidential or proprietary information which is circulated within VENACA via its internal electronic mail system, intranet or otherwise.

   I will also not disclose any confidential or proprietary information to anyone inside VENACA except on a "need-to-know" basis. If I have any questions as to what comprises such confidential or proprietary information or trade secrets, as to whom, if anyone inside VENACA, it may be disclosed, I will consult with my manager at VENACA.

4. **Assignment of inventions.** I hereby assign exclusively to VENACA all my right, title and interest in and to any all inventions, discoveries, designs, developments, improvements, copyrightable material, and trade secrets (collectively herein "Inventions") that I solely or jointly may conceive, write, encode, develop, or reduce to practice during the period of time I am in the employment of VENACA. I will make prompt and full disclosure to VENACA of any inventions, and if for any reason the assignment pursuant to this clause is not effective, will hold all such inventions in trust for the sole benefit of VENACA.

   I hereby waive and quit claim to VENACA, any and all claims of any nature whatsoever that I now or hereafter may have for infringement of any patent resulting from any patent applications for any inventions so assigned to VENACA.

   My obligation to assign shall not apply to any invention about which I can prove that:
   a) it was developed entirely on my own time; and
   b) no equipment, supplies, facilities, services or trade secret of VENACA was used in its development; and
   c) it does not relate

(i) directly to the business of VENACÁ or
(ii) to the actual or demonstrably anticipated research or development of VENACÁ; and
d) it does not result from any work performed by me for VENACÁ.

5. **Excluded and Licensed inventions**. I have attached hereto, a list describing all inventions – belonging to me and made by me prior to my employment with VENACÁ that I wish to have excluded from this agreement. If not such list is attached, I represent that there are no such inventions. If in the course of my employment at VENACÁ, I use in or incorporate into a VENACÁ product, program, process or machine, and invention owned by me or which I have an interest, VENACÁ is hereby granted and shall have an exclusive royalty-free, irrevocable, worldwide license to make, have made, use and sell that invention without restriction as to the extent of my ownership or interest.

6. **Application for Copyright and Patents**. I will execute any proper oath or verify any proper document in connection with carrying out the terms of this agreement. If, because of my mental or physical incapacity or for any other reason whatsoever, VENACÁ is unable to secure my signature to apply for or to pursue any application for any United Staes or foreign patent or copyright covering inventions assigned to VENACÁ as stated above, I hereby irrevocably designate and appoint VENACÁ and its duly authorized officers and agents as my agent and attorney in fact, to act for me and in my behalf and stead, to execute and file any prosecution and issuance of Indian and foreign patents and copyrights thereon with the same legal force and effect as if executed by me. I will testify at VENACÁ request and expense in any interference, litigation or other legal proceeding that may arise during or after my employment.

7. **Third party information**. I recognize that VENACÁ has received and will receive confidential or proprietary information from its customers as well as third parties subject to a duty on VENACÁ part to maintain the confidentiality of such information and to use it only for certain limited purpose. During the term of my employment and thereafter, I will not disclose such confidential or proprietary information to anyone except as necessary in carrying out my work in VENACÁ and consistent with VENACÁ agreement with such customers or third party. I will not use such information for the benefit of anyone other than VENACÁ or such third party, or in any manner inconsistent with any agreement between VENACÁ and such third party of which I am made aware.

8. **Prior Employer Information**. During my employment at VENACÁ, I will not use improperly or disclose any confidential or proprietary information or trade secrets of my former or current employers, principals, partners, co-ventures, clients, customers or suppliers of the vendors or customers of such persons or entities or their vendor or customers and I will not bring onto the premises of VENACÁ, any unpublished document or any property belonging to any such persons or entities or their vendors or customers unless such persons or entities have given their consent. I will not violate any non-disclosure or proprietary rights agreement I might have signed in connection with any such person or entity.

9. **Presumption of breach**. In the event of the possession, access and or use of the confidential or proprietary technical, financial, marketing, manufacturing, distribution or other technical or business information or trade secrets of VENACÁ, including without limitation, concepts, technique's processes, methods, system's, designs, clients, cost data, computer programs, formulae, development or experimental work, work-in-progress, customers and suppliers as well as software for business and professional use, application programs, internet websites, e-commerce solutions, books, hardware and information for the microcomputer and internet marketplace by any other third party with whom I may have a nexus, it shall be presumed, unless proved to the contrary, that such information has so come to the possession of the third party on account of breach of this agreement by me.

10. **Term of employment**. I acknowledge that my employment will be of indefinite duration and that either VENACÁ or I will be free to terminate this employment relationship at will and at any time with or without cause. I also acknowledge that any representations to the contrary are unauthorized and void, unless in writing and signed by an officer of VENACÁ.

11. **Return of materials**. At the time I leave the employment of VENACÁ, I will return to VENACÁ all papers, drawings, notes, memoranda, manuals, specifications, designs, devices, documents, diskettes, CD's, DVD's. Tapes, DAT Drives and any other material on any media containing or disclosing any confidential or proprietary technical or business information. I will also return any keys, pass cards, ID cards or other property belonging to VENACÁ.

12. **Non-solicitation**. While employed at VENACÁ and for a period of 2 years from the termination of my employment, I will not induce or attempt to influence directly or indirectly, any employee at VENACÁ to terminate his employment with VENACA or to work for me or any other person or entity.

13. **Personal property**. I agree that VENACÁ will not be responsible for loss, disappearance, or damage to personal property on VENACÁ premises, or if applicable, on residential premises subsidized by VENACÁ (including apartments or

temporary housing). I hereby release, discharge and hold VENACÁ harmless from any and all claims relating to loss of, disappearance, or damage to such personal property.

14. **Equitable relief**. I acknowledge that any violation by me under this agreement, and/or any obligation of like nature, will cause irreparable injury to VENACÁ, and VENACÁ shall be entitled to extraordinary relief in any court in the United States, including, but not limited to, temporary restraining orders, preliminary injunctions, and permanent injunctions, without the necessity of posting bond or security.

15. **Dispute Resolution.** Except as provided in paragraph 14 above, in the event of any dispute or claim relating to or arising out of this employment relationship, this Agreement, or the entering into or termination of this employment relationship (including, but not limited to, any tort, contract or discrimination claims), all such disputes shall be fully and finally resolved by binding arbitration conducted by the American Arbitration Association in New York County, New York; provided, however, that this arbitration provision shall not apply to any disputes or claims relating to or arising out of the misuse or misappropriation of the Company's trade secrets or proprietary information.

16. **Attorney fees.** If any legal proceedings are required to enforce any provision of this agreement, the prevailing party shall be entitled to an award of reasonable and necessary expenses of litigation, including reasonable attorney fees.

17. **Entire Agreement**. I agree that this agreement shall be governed for all purposes by the laws of New York State. If any provision of this agreement shall be declared excessively broad, it shall be construed so as to afford VENACÁ the maximum protection permissible by law. If any provision of this agreement is void or is so declared, such provision shall be severed from this agreement, which shall otherwise remain in full force and effect. This agreement sets forth the entire agreement of the parties as to the subject matter hereof and any representations, promises, or conditions in connection therewith not in writing and signed by both parties shall not be binding upon either party, the terms and conditions of this agreement shall survive termination of my employment and shall supersede any previous agreements.

**HAVING READ AND FULLY UNDERSTOOD THIS AGREEMENT, I have signed my name on this _10_ day of _May_, 200_5_.**

Inventions listed on attached: _____ YES __X__ NO

_Eric Bolten_
(Signature of: _____)

Witness _____                    Witness _____