UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of

JOHN ERIC BOLTEN,

                              Petitioner,

For an Order of Attachment in Aid of Arbitration Pursuant to Rule 64 of the Federal Rules of Civil Procedure and CPLR § 7502(c),

                        -against-

VENACA, INC.,

                              Respondent.

06 Civ. 3438 (PKC)(FM)

**REPLY AFFIDAVIT OF JOHN ERIC BOLTEN**

STATE OF NEW YORK    )
                               ss.:
COUNTY OF NEW YORK  )

      John Eric Bolten, being duly sworn, deposes and says:

      1.     I am the Petitioner in this Special Proceeding. I submit this Reply Affidavit in order to address the contentions in the Affidavit of George Grippo ("Grippo Aff.") in opposition to my Verified Petition for an Order of Attachment in aid of my arbitration against Venaca, Inc. ("Venaca").

      2.     As demonstrated below, the assertions contained in Mr. Grippo's Affidavit are absolutely disingenuous.

      3.     More critically, Mr. Grippo's Affidavit is completely silent on several critical facts established in my Verified Petition, which Venaca has not answered or otherwise denied.

    4.        First, and most important, neither Mr. Grippo nor anyone else representing Venaca has denied the accuracy and/or enforceability of the August 1, 2006 letter to me signed by Thomas F. Burnhill – at the time, Venaca's CEO -- expressly acknowledging and admitting Venaca's obligation to me of $142,991 for past due earned commissions owed to me for sales through August 1, 2006. *See* Amended Verified Petition Exhibit D.

    5.        Nor does Mr. Grippo deny the accuracy of Paragraphs 21 and 22 (and Exhibit E) of the Verified Petition which establishes that between August 1, 2006 and January 1, 2007, I earned an additional $48,427 in additional commissions.

    6.        Mr. Grippo's silence on this critical facts is an acknowledgement of Venaca's admitted obligation to me for these commissions.

**The Alleged Expense Set-Off**

    7.        In Paragraphs 7, 8 and 9 of his Affidavit, Mr. Grippo asserts that Venaca's failure to pay me my earned commissions of $185,418, plus appropriate interest, is somehow subject to set-off of "improper expenses" for three trips I billed to Venaca in 2006. *See* Grippo Aff. ¶¶ 7, 8, 9.

    8.        Significantly, the three instances of travel bills cited in Mr. Grippo's Affidavit amount to a total of $433.30. And these three trips were taken in 2006, years after Mr. Burnhill expressly acknowledged Venaca's debt to me of $142,991 for past due earned commissions owed for sales through August 1, 2006.

    9.        I find it unbelievable that Mr. Grippo would actually attempt to contend that Venaca's total debt to me of $185,418 is somehow obviated by $433 in travel expenses I billed to Venaca.

10. In any event, there was nothing improper about these $433 in travel expenses. Venaca knew when it hired me that I lived in the Boston area, and that for some business trips, there would be some additional travel expenses incurred.

**The Allegations of Performance Issues**

11. Mr. Grippo also now charges that "in three years as Venaca's Vice President of Sales, [I] never learned or was able to demonstrate the product [I] was allegedly selling." *See* Grippo Aff. ¶ 15. This is an offensive charge, unsupported by any objective evidence whatsoever.

12. Indeed, if I was such a poor salesman, then how was it that Venaca's CEO acknowledged that Venaca owed me $142,991 for commissions I earned for sales through August 1, 2006?

13. Mr. Grippo also now has the audacity to claim that Venaca lost a sale to Christian Broadcast Network ("CBN") because I was "intoxicated" for a meeting. *See* Grippo Aff. ¶ 17. That claim is, quite frankly, shameful.

14. The CBN sale was lost due to the fact that while we were exhibiting out software to the representatives of CBN at the trade show in Las Vegas, the storage platform we were using failed. It overheated because there was insufficient ventilation. Although we explained to the CBN representatives that the storage platform failure was not our fault, they clearly lost confidence in our product, and walked away from our booth.

15. Next, Mr. Grippo claims that "[I] became such a problem in terms of meeting sales targets, following up with potential clients, closing sales and prospecting for new potential sales that Venaca assigned a 'keeper' to [me] to monitor [my] progress

and remind [me] of the tasks [I] needed to perform and ensure that [I] followed up. *See* Grippo Aff. ¶ 19.

16. This contention is even more false and outrageous than CBN contention.

17. Mr. Grippo and/or his counsel have concocted this "keeper" claim by distorting the March 28, 2006 e-mail sent by Heather Shankwiler to my Administrative Assistant, Wasiqa Qasuria. *See* Exhibit 5 to Mr. Grippo's Affidavit.

18. The claim is utterly bogus. I have attached as Exhibit A the May 22, 2007 Declaration of Ms. Shankwiler which establishes that her e-mail contains a list of current open projects that she and I were working so that we were all on the same page before she left for vacation. Ms. Shankwiler called Ms. Qasuria the "keeper" of the list because she was my Administrative Assistant.

**<u>The Allegation That I "Poached" Mr. Haley</u>**

19. Mr. Grippo's next contention is that I "flouted [my] contractual obligation under the Agreement by soliciting" Mr. Haley and "inducing him to leave Venaca to work with [me]." *See* Grippo Aff. ¶ 20.

20. This is another patently false contention.

21. To put this issue to rest, I have attached as Exhibit B the May 22, 2007 Affidavit of Mr. Haley who, with objective documentary proof, establishes that I did not solicit him. Quite the contrary. Mr. Haley contacted me after he decided to leave Venaca following a wave of IT lay-offs last Fall.

22. Mr. Grippo's offensive claim that Venaca will seek to recover $750,000 in revenue and costs as a result of the false allegation that I solicited Mr. Haley's departure

4

demonstrates the length that he and the company will go to avoid their admitted obligations to me for my earned commissions.

**The Alleged "Unauthorized" Vacation**

23. From when I started working for Venaca in April 2003 through December, 2006, I had taken no vacations.

24. At the end of December, 2006, I decided to take a trip to India to attend the wedding of my Administrative Assistant, Ms. Qasuria. I left for the trip shortly before Christmas, and returned January 10, 2007.

25. Mr. Grippo now claims that my trip to attend Ms. Qasuria's wedding over the holidays was somehow improper because it was more than a two week vacation. *See* Grippo Aff. ¶ 23. This is another outrageous assertion.

26. Indeed, given the holidays, although the trip encompassed about three calendar weeks, it only covered 10 working days.

**Of Course I Was Making Sales Efforts From September 2006 Through My Departure**

27. I also absolutely dispute Mr. Grippo's contention that: "Bolten made no sales efforts from about September 2006 through his termination." *See* Grippo Aff. ¶ 24.

28. First, I was not "terminated" by Venaca; I quit.

29. Second, of course I was making sales efforts from September 2006 through my departure. I was working with our existing customers, such as Turner Broadcasting, Scripps Network, MTV, and Lifetime, to accelerate the payment schedule for 2006 sales in an attempt to solve Venaca's cash crisis. I also worked on comprehensive customer survey to understand our current position in the marketplace and what direction the customers

wanted the company to take. I also diligently worked with Mr. Grippo on the "S1" and "S2" packages, smaller software packages that would be less expensive and easier to sell.

30. Mr. Grippo knows full well of my diligent efforts for the company, and I am offended by his attempts to now re-write history because he simply does not want to pay me what I am owed.

**The Purported "Confidential" Spreadsheet**

31. Mr. Grippo also takes issue with the fact that as proof that my arbitration award may be rendered ineffectual without provisional relief, I submitted the "12 Month Cash Flow" for 2007.

32. I submitted this documentary proof because if I did not, Venaca would have surely claimed that my allegation of its impending financial peril was without proof.

33. Although Mr. Grippo now claims that the document is "outdated," he does not otherwise dispute the claim in the Verified Petition that Venaca will not have the financial resources to make good on my eventual arbitration award.[1]

**Ms. Sardini's Affidavit**

34. Finally, I am compelled to respond to Ms. Sardini's Affidavit, attached to the back of Mr. Grippo's Affidavit.

35. Ms. Sardini does not refute any of the core contentions in my Verified Petition about the amounts admittedly owed to me by Venaca.

36. Instead, she claims that I allegedly make some false statement to the Venaca Board concerning College Sports Television ("CSTV"). She does not, however, state the

---

[1] Of course, any claim that my inadvertent retention of this one document was a technical breach of my Employment Agreement is negated by: (i) the fact that Venaca breached its obligations to me under the Agreement by deliberately not paying me by earned commissions; and (ii) that, according to Mr. Grippo, the document is "outdated" and therefore allegedly inaccurate.

6

particulars of what I allegedly said to her that was not accurate about CSTV, so it is impossible for me to fully respond to this baseless charge.

37. However, I will say that this is the very first time I am hearing any claim that I allegedly made some false statement to the Venaca Board about CSTV. Indeed, Ms. Sardini never said anything to me about the matter. Nor does she submit any objective support for this belated charge – not a single note, memo, letter, e-mail. Nothing.

_____
John Eric Bolten

Sworn to before me this
22nd day of May, 2007

_____
Notary Public

LEONARD F. LESSER
Notary Public, State of New York
No. 02LE6161463
Qualified in NEW YORK County
Commission Expires FEBRUARY 26, 2011

7